IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CAROLYN VIRGINIA KOBULNICKY, )
)
Plaintiff, )
)
vs. ) Civil Action No. 11-1349
)
MICHAEL J. ASTRUE, )
COMMISSIONER OF SOCIAL SECURITY, )
)
Defendant. )

ORDER

AND NOW, this 27th day of March, 2013, upon consideration of Defendant's Motion for Summary Judgment (document No. 11) filed in the above-captioned matter on May 9, 2012,

IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (document No. 9) filed in the above-captioned matter on April 9, 2012,

IT IS HEREBY ORDERED that said Motion is GRANTED IN PART and DENIED IN PART. Specifically, Plaintiff's Motion is granted to the extent that it seeks a remand to the Commissioner of Social Security ("Commissioner") for further evaluation as set forth below and denied in all other respects. Accordingly, this matter is hereby remanded to the Commissioner for further evaluation under sentence four of 42 U.S.C. § 405(g) in light of this Order.

I. **Background**

On April 18, 2008, Plaintiff Carolyn Virginia Kobulnicky filed her application claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security

1

Act, 42 U.S.C. §§1381-1383f. (R. 43-54).[1] Specifically, Plaintiff claimed that she became disabled on December 26, 2007, due to back pain caused by herniated and torn discs, degenerative arthritis in the spine, and a bulging disc in her neck. (R. 37, 60, 68, 74, 78). Plaintiff also alleged disability because of anxiety and depression. (R. 74).

After being denied initially on December 19, 2008, Plaintiff filed a "Request for Hearing by Administrative Law Judge ("ALJ") on January 16, 2009, stating that she disagreed with the initial determination because she "cannot handle pain during normal activities, or work at this time. I need surgery."[2] (R. 32-41, 42). On the "Request for Hearing" form, Plaintiff indicated she did not wish to appear at the hearing and requested that the decision be made based on the evidence in her case. (R. 42). In a decision dated June 5, 2009, the ALJ denied Plaintiff's request for benefits. (R. 24-31). The Appeals Council declined to review the ALJ's decision on August 25, 2011. (R. 1-3). On October 27, 2011, Plaintiff filed a timely appeal with this Court, and the parties have filed cross-motions for summary judgment.

## II.     Standard of Review

Judicial review of a social security case is based upon the pleadings and the transcript of the record. See 42 U.S.C. § 405(g). The scope of review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. See Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive") (quoting 42 U.S.C. § 405(g));

---

[1] The Court notes that Plaintiff's protective filing date was March 31, 2008. (R. 68).
[2] The Court notes that this request was received by the Administration on January 20, 2009. (R. 42). It further notes that the "Disability Determination and Transmittal" is dated December 17, 2008. (R. 19-20).

2

Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999) (noting that the court has plenary review of all legal issues, and reviews the administrative law judge's findings of fact to determine whether they are supported by substantial evidence).

"Substantial evidence" is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). However, a "single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). "Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion." Id. at 317. A disability is established when the claimant can demonstrate some medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period. See Fargnoli v. Massanari, 247 F.3d 34, 38-39 (3d Cir. 2001). "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ....'" Id. at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Social Security Administration ("SSA") has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability as defined by the Act. See 20 C.F.R. § 404.1520. In Step One, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. See 20

C.F.R. § 404.1520(b). If so, the disability claim will be denied. See Bowen v. Yuckert, 482 U.S. 137, 140 (1987). If not, the second step of the process is to determine whether the claimant is suffering from a severe impairment. See 20 C.F.R. § 404.1520(c). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). If the claimant fails to show that his or her impairments are "severe," he or she is ineligible for disability benefits. If the claimant does have a severe impairment, however, the Commissioner must proceed to Step Three and determine whether the claimant's impairment meets or equals the criteria for a listed impairment. See 20 C.F.R. § 404.1520(d). If a claimant meets a listing, a finding of disability is automatically directed. If the claimant does not meet a listing, the analysis proceeds to Steps Four and Five.

Step Four requires the ALJ to consider whether the claimant retains the residual functional capacity ("RFC") to perform his or her past relevant work. See 20 C.F.R. § 404.1520(e). The claimant bears the burden of demonstrating an inability to return to his or her past relevant work. See Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume his or her former occupation, the evaluation moves to the fifth and final step.

At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy in order to deny a claim of disability. See 20 C.F.R. § 404.1520(g). In making this determination, the ALJ should consider the claimant's RFC, age, education, and past work experience. See id. The ALJ must further analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled. See 20 C.F.R. § 404.1523.

### III. The ALJ's Decision

In the present case, the ALJ found that Plaintiff met the insured requirements of the Social Security Act through December 31, 2009. (R. 26). Accordingly, to be eligible for DIB benefits, Plaintiff had to establish that she was disabled on or before that date. See 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B); 20 C.F.R. §§ 404.101, .110, .131.

The ALJ then proceeded to apply the sequential evaluation process when reviewing Plaintiff's claim for benefits. In particular, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since the alleged onset of disability. (R. 26). The ALJ also found that Plaintiff met the second requirement of the process insofar as she had severe impairments, specifically, degenerative disc disease and obesity. (Id.). The ALJ concluded that Plaintiff's impairments did not meet any of the listings that would satisfy Step Three. (R. 28).

The ALJ found that Plaintiff retained the RFC to engage in the full range of sedentary work. (R. 28). Based on this RFC, Plaintiff established that she was incapable of returning to her past employment; therefore, the ALJ moved on to Step Five. (R. 30). No vocational expert ("VE") was called upon for Step Five of the sequential evaluation process. Instead, the ALJ employed the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpt. P, App. 2 (the "Grids") and determined that Medical-Vocational Rule 201.24 directed a finding of "not disabled." Accordingly, the ALJ found that Plaintiff was not disabled. (R. 30).

### IV. Legal Analysis

Plaintiff raises several arguments as to why the ALJ erred in finding she was not disabled. Specifically, Plaintiff contends that the ALJ committed error in: (1) finding that her mental impairments of Bipolar Disorder and Post-Traumatic Stress Disorder ("PTSD") were non-severe, (2) concluding that her impairments did not meet or equal a listing, (3) finding that she validly waived her right to appear at the hearing, (4) determining that she retained the RFC to

perform the full range of sedentary work, and (5) applying the Medical-Vocational Guidelines (the "Grids") at Step Five to find her "not disabled." See Plaintiff's Brief (Doc. No. 10). Defendant argues that the record evidence as a whole provides substantial support for the ALJ's ultimate determination that Plaintiff was not disabled.

While the Court does not reach all of Plaintiff's arguments, it does agree that remand is warranted in this case. Specifically, the Court finds that substantial evidence does not support: (i) the ALJ's Step Two determination that Plaintiff's mental impairments were non-severe, (ii) the ALJ's RFC determination that Plaintiff was able to perform the full range of sedentary work, (iii) the ALJ's use of the Grids at Step Five to find Plaintiff capable of performing "other work" available in the national economy. In light of the errors committed by the ALJ, the Court cannot conclude that substantial evidence supports his ultimate determination that Plaintiff is not disabled. Accordingly, the Court will remand the case for further consideration consistent with this Order.

### A. ALJ's Step Two Determination

In finding that Plaintiff only had mild limitations in (i) activities of daily living, (ii) social functioning, and (iii) concentration, persistence, or pace, the ALJ relied solely on Dr. Newman's opinion in Exhibit 11F and completely ignored the conflicting opinion of Dr. Santilli in Exhibit 12F. The record indicates that Dr. Newman, a state agency psychologist, performed a consultative examination on December 16, 2008, and opined that Plaintiff had no limitations in her ability to (i) understand, remember, and carry out instructions and (ii) respond appropriately to supervision, co-workers, and work pressures in a work setting. See Exhibit 11F (R. 258-61).[3]

---

[3] It should be noted that Dr. Newman's opinion did not contain a diagnosis, and, when asked whether any other capabilities were affected by her mental impairments, he checked "yes" and

The very next day, however, Plaintiff was examined by Dr. Santilli, another state agency psychologist, who found that Plaintiff had *moderate limitations* in the same functional areas; specifically, Dr. Santilli found that Plaintiff was moderately limited in the areas of: (i) understanding and memory, (ii) sustained concentration and persistence, and (iii) social interaction. See Exhibit 12F (R. 263-64). Dr. Santilli recognized that her findings were at odds with the findings of Dr. Newman and concluded that the material difference in opinion was based on the fact that Dr. Newman had "underestimated" the severity of Plaintiff's functional restrictions. (R. 265). Dr. Santilli explained that Dr. Newman's opinion "contrasts sharply with other evidence in the record" and that his "statements . . . concerning [Plaintiff's] abilities in the areas of making occupational adjustments and making personal and social adjustments are not consistent with all of the medical and non-medical evidence" in the record. (Id.).

Although Dr. Santilli noted the conflict between her opinion and the opinion of Dr. Newman, the ALJ failed to do the same in assessing the severity of Plaintiff's mental impairments. Indeed, the ALJ's discussion was focused entirely on Exhibit 11F and Dr. Newman's consultative examination on December 16, 2008, and made no mention of Exhibit 12F and Dr. Santilli's consultative exam that took place the very next day. (R. 26-28). The Court finds that the ALJ's failure to address Dr. Santilli's opinion and resolve the conflict it created is error that requires remand.

Indeed, one of the ALJ's primary functions is to resolve conflicting evidence in the record. See Plummer, 186 F.3d at 429. The ALJ here, however, did not even allude to the fact that a contrary opinion existed in the record in his Step Two analysis. The ALJ had a duty to reconcile Dr. Santilli's conflicting opinion with the opinion that he relied on in finding that

---

stated that Plaintiff "has primary somatic complaints and I am not able to directly comment upon them." (R. 260-61).

Plaintiff's mental impairments were non-severe. See Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981) ("when [expert] medical testimony or conclusions are conflicting, the ALJ is not only entitled but required to choose between them."). Although the ALJ certainly is not bound by the medical opinions, he must nonetheless (i) demonstrate his consideration of all the relevant medical evidence of record and (ii) explain which evidence he chose to reject in arriving at his conclusion. See Plummer, 186 F.3d at 429 ("The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects."); see also id. at 429 ("When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'") (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993)); Cotter, 642 F.2d at 706 ([T]here is a particularly acute need for some explanation by the ALJ when s/he has rejected relevant evidence or when there is conflicting probative evidence in the record."). The ALJ's failure to address Dr. Santilli's conflicting opinion and explain his reason for rejecting it deprives this Court of its ability to perform meaningful judicial review, as it cannot determine whether the ALJ considered and rejected Dr. Santilli's opinion or simply ignored it altogether.[4] See Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009) ("The ALJ must provide a 'discussion of the evidence' and an 'explanation of reasoning' for his conclusion sufficient to enable meaningful judicial review.") (quoting Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 120 (3d Cir. 2000).

Defendant's attempt to fill in the gaps by pointing to all the medical evidence in the record that supports the ALJ's finding misses the mark, as it is not Defendant's job -- nor the job

---

[4] The Court finds that the single citation to Exhibit 12F at the end of the ALJ's RFC analysis does not suffice to explain his basis for why he chose to credit Dr. Newman's opinion over the opinion of Dr. Santilli. See (R. 29). There is no reference to Dr. Santilli's observations or exam findings and the Court finds that a more comprehensive discussion was required, particularly in light of the fact that two consultative examiners evaluated Plaintiff within 24-hours of one another yet reached materially different conclusions.

8

of the Court -- to account for the missing pieces in the ALJ's explanation. See Fargnoli, 247 F.3d at 44 n.7; see also Roundtree v. Astrue, 2008 WL 161149, at *6 (E.D. Pa. Jan. 16, 2008) ("it is impermissible for the court to supply its own reasons to support an ALJ's decision; the court must limit its analysis to the explanations an ALJ actually provides for her decision"). Defendant's explanation as to why Plaintiff's medical records support a finding of non-disability cannot substitute for the analysis that the ALJ was required to provide. It was the ALJ's duty to communicate explicitly his rationale and his failure to explain his basis for crediting Dr. Newman's opinion over Dr. Santilli's renders the Court unable to determine whether he gave the latter opinion any meaningful consideration at all.[5] See Fargnoli, 247 F.3d at 43-44. Accordingly, the Court finds that substantial evidence does not support the ALJ's finding that Plaintiff's mental impairments were non-severe.[6]

---

[5] The Court notes that, although it finds that substantial evidence does not support the ALJ's Step Two Determination because of his failure to address conflicting opinion evidence in the record, the determination as to whether Plaintiff suffers from a severe impairment is a threshold analysis requiring the showing of only one severe impairment. See Bradley v. Barnhart, 175 Fed. Appx. 87, 90 (7th Cir.2006). In other words, as long as a claim is not denied at Step Two, it is not generally necessary for the ALJ to have specifically found any additional alleged impairment to be severe. See Salles v. Comm'r of Soc. Sec., 229 Fed. Appx. 140, 145 n. 2 (3d Cir. 2007); Lee v. Astrue, 2007 WL 1101281, at *3 n. 5 (E.D.Pa. Apr.12, 2007); Lyons v. Barnhart, 2006 WL 1073076, at *3 (W.D.Pa. March 27, 2006). Since the ALJ identified two severe impairments -- degenerative disc disease and obesity -- it technically does not matter whether the ALJ correctly or incorrectly found her mental impairments to be non-severe at Step Two.

[6] The Court notes that in finding Plaintiff's mental impairments to be non-severe, the ALJ also omitted from his discussion the fact that Plaintiff (i) had undergone a one-week psychiatric in-patient hospitalization ten months prior to her alleged onset date and (ii) was assessed in treatment records from Irene Stacy with having GAF scores between 35 and 45 eight months prior to her alleged onset date. See (R. 80, 83). Defendant argues that the ALJ's failure to discuss this evidence is inconsequential because: (i) these records predate the alleged onset date, (ii) Plaintiff did not seek treatment by a mental health professional following her alleged onset date, and (iii) Plaintiff did not allege disability due to mental impairments in her applications. See Def.'s Brief (Doc. No. 12 at 12, 14). While those factors might very well constitute the rationale underlying the ALJ's non-severity finding, the Court already has explained that it must evaluate the ALJ's decision as it was explained by the ALJ himself. It was his obligation to set forth his reasoning and cite to those facts if they did indeed form the basis for his implicit

## B. ALJ's RFC Determination[7]

The Court finds that substantial evidence does not support the ALJ's RFC determination that Plaintiff was able to perform the full range of sedentary work because the ALJ failed to (i) discuss Dr. Baumgartel's finding that Plaintiff was completely unable to stoop and (ii) account for the limitations caused by Plaintiff's mental impairments, even if the ALJ was correct in determining that they were non-severe. First, in crafting Plaintiff's RFC, the ALJ relied on the opinion of Dr. Baumgartel, a state agency consultative examiner, who found that, although Plaintiff was not limited in her ability to sit, she did have postural limitations and *could never*

---

rejection of that mental health evidence. See Irizarry v. Barnhart, 233 Fed. Appx. 189, 192 n. 5 (3d Cir. 2007). The ALJ, however, did not set forth any explanation for his apparent rejection of this evidence and the Court is bound by his silence. Although the ALJ cited to Exhibit 1F which contained Plaintiff's record from her one-week hospitalization at Butler Hospital in support of his finding that she had medically determinable mental impairments of Bipolar and PTSD, the Court is unable to determine whether he considered anything aside from her diagnoses in this exhibit in making his finding at Step Two. Furthermore, the Court notes that the ALJ did not cite to the Irene Stacy mental health record at all (Exhibit 2F) even though it contained evidence that Plaintiff was assigned a GAF score of 45 and a notation that Plaintiff "has problems with racing and ruminating thoughts." (R. 83). The ALJ does not discuss any observations, notations, or conclusions contained in those records and does not explain how a GAF score as low as even 45 was consistent with his finding that Plaintiff had only mild limitations in the "Paragraph B Criteria." See (R. 27). The ALJ is advised to address this evidence on remand.

[7] The Court notes that it agrees with Plaintiff regarding the inadequacy of the ALJ's Step Three finding. See Pl. Brief (Doc. No. 10 at 20-21). On remand, the ALJ is advised that his discussion at this step should entail more than a boilerpate, conclusory statement that Plaintiff's impairments did not meet or equal a listing. See Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004) (noting that the "ALJ's bare conclusory statement that an impairment did not match, or is not equivalent to a listed impairment [is] insufficient."); Diaz, 577 F.3d at 504 (same). The sum total of the ALJ's discussion at this step is as follows: "The claimant's impairment does not meet or medically equal the requirements of any of the impairments set forth in Section 1.00 of Appendix, dealing with the musculoskeletal system." (R. 28). The Court finds that substantial evidence does not support this finding as it is a boilerplate recitation and the ALJ does not discuss or make reference to the medical evidence he relied on in making this determination.

10

*stoop* (R. 245).⁸ (R. 29). The ALJ gave more weight to Dr. Baumgartel's opinion because he found it to be "more consistent with the medical evidence considered as a whole," yet he neither included the stooping limitation in his RFC assessment nor explained why he did not.⁹ (Id.).

RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Fargnoli, 247 F.3d at 40; see also 20 C.F.R. §§ 404.1545(a), 416.945(a). Not only must an ALJ consider all relevant evidence in determining an individual's RFC, the RFC finding "must 'be accompanied by a clear and satisfactory explication of the basis on which it rests.'" Fargnoli, 247 F.3d at 41 (quoting Cotter, 642 F.2d at 704); see also Social Security Ruling ("S.S.R.") 96–8p, 1996 WL 374184 (S.S.A.), at *7 (July 2, 1996) ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)"). In making his RFC determination, "an ALJ must describe how the evidence supports his conclusion and explain why certain limitations are not accepted as consistent with the medical or other evidence." Noah v. Astrue, 2013 WL 364235, at *2 (W.D.Pa. Jan. 30, 2013) (citing Plummer, 186 F.3d at 429 ("An ALJ must consider all the evidence and give some reason for discounting the evidence she rejects.")).

In finding Dr. Baumgartel's opinion to be more consistent with the evidence as a whole, the ALJ did not explain his basis for excluding the stooping limitation from his RFC

---

⁸ The ALJ also relied on Dr. Newman's opinion that Plaintiff's mental impairments did not limit her in any way (R. 258), as illustrated by the fact that he did not incorporate any corresponding limitations in her RFC. (R. 28-29).

⁹ The Court notes that the ALJ credited Dr. Baumgartel's opinion over the opinion of Dr. Tran, another consultative examiner who evaluated Plaintiff on October 3, 2008, a few weeks after Dr. Baumgartel's exam. See Exhibit 10F (R. 251-257). The ALJ gave little weight to Dr. Tran's opinion even though Dr. Tran found that Plaintiff: (i) had no postural limitations and (ii) was able to sit for six-hours in an eight-hour day. (R. 252-253).

11

determination. This constitutes error because the ALJ was required to either include this limitation in his RFC assessment or explain why its inclusion was not warranted. The ALJ, however, did not even address the stooping limitation even though it was contained within the opinion he relied on in making his RFC finding. The ALJ's failure to discuss the stooping limitation was a significant oversight in light of S.S.R. 96-9p, which establishes that Plaintiff's complete inability to stoop had a substantial effect on her ability to perform the full range of sedentary work. See S.S.R. 96–9p, 1996 WL 374185 (S.S.A), at *8 (July 2, 1996). Indeed, S.S.R. 96-9p provides that "[a] **complete** inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply." Id. (emphasis in original). This is consistent with case law indicating that ALJs must discuss a plaintiff's postural limitations, particularly the ability to stoop, which factor into the determination of whether a claimant can perform a full range of sedentary work. See Butler v. Barnhart, 353 F.3d 992, 1000–01 (D.C.Cir.2004); Spaulding v. Halter, 11 Fed. Appx. 596, 600 (7th Cir.2001); Chester v. Callahan, 193 F.3d 10, 13 (1st Cir.1999); Guyer v. Astrue, 2009 WL 482245 (W.D.Pa. Feb.25, 2009); De Aza v. Comm'r of Soc. Sec., 2008 WL 4723778, at *4 (D.N.J. Oct.24, 2008). Thus, the Court finds that substantial evidence does not support the ALJ's finding that Plaintiff could perform the full range of sedentary work in light of his failure to address the stooping limitation.

Second, even if substantial evidence supported the ALJ's finding that Plaintiff's mental impairments were non-severe at Step Two, the ALJ still was required to analyze what limitations her non-severe impairments caused in constructing his RFC finding. See S.S.R. 96–8p, 1996 WL 374184, at *5 (the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'" in assessing RFC); see also 20 C.F.R.

§§ 404.1545(a)(2), 416.945(a)(2). "While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may-when considered with limitations or restrictions due to other impairments-be critical to the outcome of a claim." S.S.R. 96–8p, 1996 WL 374184, at *5. In making his RFC determination, the ALJ is completely silent as to the limitations caused by Plaintiff's non-severe mental impairments of Bipolar Disorder and PTSD, despite the existence of conflicting evidence in the record which indicates that Plaintiff's mental impairments caused moderate limitations in her ability to concentrate and interact with others. See Exhibit 12F (R. 263-278). The ALJ's failure to assess the nonexertional limitations caused by Plaintiff's mental impairments in making his RFC finding constitutes error and should be addressed by the ALJ on remand. See Brown v. Astrue, 2010 WL 4455825, at *4 (E.D.Pa. Nov. 4, 2010) ("Functional limitations caused by all impairments, whether found to be severe or non-severe at step two, must be taken into consideration at steps three, four and five of the sequential evaluation.").

## C. Application of Grids Improper

In light of the fact that the record contained evidence that Plaintiff had both exertional and nonexertional limitations, the Court finds that the ALJ's use of the Grids at Step Five was improper. The Third Circuit has held that an ALJ cannot rely solely on the Grids "in the absence of a rulemaking establishing the fact of an undiminished occupational base" when a claimant has both exertional and nonexertional limitations. Sykes v. Apfel, 228 F.3d 259, 261 (3d Cir. 2000); see also Wolf v. Apfel, 1998 WL 131729, at *1 (E.D.Pa. Mar. 13, 1998) ("When presented with nonexertional limitations, an administrative law judge may not mechanically apply the "grids"). This is because "the Commissioner cannot determine that a claimant's nonexertional impairments do not significantly erode his occupational base under the medical-vocational guidelines without

13

... taking additional vocational evidence establishing as much." Id. at 261. An ALJ may apply the Grids under these circumstances only if he "rel[ies] on [a Social Security Ruling] as a replacement for a vocational expert" and it is "crystal-clear that the [Social Security Ruling] is probative as to the way in which the nonexertional limitations impact the ability to work and thus, the occupational base." Allen v. Barnhart, 417 F.3d 396, 407 (3d Cir. 2005).

Dr. Baumgartel's opinion that Plaintiff could never stoop constituted relevant medical evidence of a nonexertional limitation.[10] Pursuant to SSR 96-9p, a complete inability to stoop significantly eroded the occupational base for sedentary work. Notwithstanding the evidence of a nonexertional limitation, the ALJ did not call upon a vocational expert to establish his burden at Step-Five and instead applied the Grids to find Plaintiff not disabled. The ALJ applied the Grids without reliance on any Social Security Ruling establishing the fact of an undiminished occupational base and without regard to S.S.R. 96-9p which established the fact of a *significantly diminished* base. The Court finds that this error necessitates remand.

### Obesity

Though not raised by the parties, the Court finds that the ALJ committed the additional error of failing to consider the effect of Plaintiff's obesity on her impairments. Pursuant to S.S.R. 02-1p, "the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." SSR 02–1p, 2002 WL 31026506 (S.S.A.), at *57863 (Sept. 12, 2002). An ALJ must "consider the effects of obesity not only

---

[10] Plaintiff argues in her brief that, in addition to the limitations caused by her mental impairments and her inability to stoop, her back pain also constituted a nonexertional limitation, and "[a]ny one of these three nonexertional impairments preclude the medical-vocational guidelines directing a finding of "non-disabled." (Doc. No. 10 at 19). The Court agrees. See Poulous v. Comm'r of Soc. Sec., 474 F.3d 88, 94 n. 3 (3d Cir. 2007) ("Exertional limitations relate to the strength demands of jobs, in terms of sitting, standing, walking, lifting, carrying, pushing, and pulling. Id. All other limitations affecting the claimant's ability to meet the demands of jobs are classified as nonexertional.").

14

under the listings **but also when assessing a claim at other steps of the sequential evaluation process**, including when assessing an individual's [RFC]." Id. (emphasis added). An ALJ errs when he identifies obesity as a severe impairment but fails to subsequently consider its effect in conjunction with Plaintiff's other impairments. See Diaz, 577 F.3d at 504-05 (case remanded where ALJ identified obesity as severe impairment but failed to discuss its combined effect on plaintiff's impairments thereafter); Compare Douglas v. Astrue, 2011 WL 482501, at *3-4 (E.D.Pa. Feb. 4, 2011).

Here, the ALJ identified obesity as a severe impairment at Step Two, yet did not consider its combined effect with Plaintiff's other impairments at any subsequent step of his analysis. Indeed, his discussion made no mention of obesity at any time after he deemed it a severe impairment, even though Plaintiff's obesity may very well have had an effect on her degenerative disc disease and contributed to her allegations of disabling back pain. This issue should be addressed by the ALJ on remand as well.

## V. Conclusion

In short, the Court finds that substantial evidence does not support the ALJ's RFC determination or his findings at Steps Two, Three, and Five. Accordingly, the Court finds that the ALJ's determination of non-disability in this case does not enjoy the support of substantial record evidence. The Court hereby remands this case to the Commissioner for reconsideration consistent with this Order.

s/Alan N. Bloch
United States District Judge

ecf: Counsel of record

15